# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DANIEL J. O'BRIEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV00536 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Daniel J. O'Brien, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 7, 9; see also Docket Entry 8 (Plaintiff's Memorandum), Docket Entry 10 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of May 13, 2011. (Tr. 171-77.) Upon denial of that application initially (Tr. 41-53, 93-101) and on reconsideration (Tr. 54-69, 103-10), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 111-12). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 14-40.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 70-84.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-4), thus making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through June 30, 2014.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since May 13, 2011, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: ocular headaches, major depressive disorder, post-traumatic stress disorder, and anxiety disorder.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] must avoid concentrated exposure to dangerous moving machinery and unprotected heights. He must also avoid concentrated exposure to dust, fumes, gases, odors, poor ventilation, and other pulmonary irritants. [Plaintiff] would have frequent near and far acuity and would be able to work with small objects. [Plaintiff] would be able to understand, remember, and carry out simple instructions; make judgments on simple

2

work related decisions; and respond to usual work situations and to changes in a routine work setting. He should have only brief, infrequent, and superficial contact with the public and only occasional contact with coworkers and/or supervisors. [Plaintiff] could maintain attention and concentration for two-hour segments over an eight-hour period and complete a normal workweek without excessive interruptions from psychologically or physically based symptoms.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from May 13, 2011, through the date of this decision.

(Tr. 75-84 (bold font and internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

3

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

4

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[2]  "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

the ALJ must assess the claimant's residual functional capacity ("RFC")." Id. at 179.[3]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled.  See id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled.  Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP.  The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) the ALJ erred by failing to "give a complete function-by-function analysis of the nonexertional mental functions associated with [Plaintiff's] mental impairments" (Docket Entry 8 at 4); and

(2) "the ALJ did not explain why limitations contained in medical records and medical opinions [to which] he gave significant weight were not included in the RFC finding" (id. at 8).

Defendant disputes all of Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability.  (See Docket Entry 10 at 4-18.)

### 1. Function-by-Function Assessment

Plaintiff first contends that the ALJ failed to perform a function-by-function analysis of Plaintiff's mental limitations in violation of Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *6 (July 2, 1996) ("SSR 96-8p"), and Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015).  (See Docket Entry 8 at 2-8.)  Specifically, Plaintiff maintains that the ALJ did not adequately explain how the RFC accounts for Plaintiff's mild limitation in activities of daily living or his moderate limitation in social functioning and concentration, persistence, or

8

pace. (See id. at 3-8.) Plaintiff's first assignment of error fails to warrant relief.

At steps two and three of the SEP, the ALJ must assess the degree of functional limitation resulting from Plaintiff's mental impairments pursuant to criteria in the corresponding mental disorders in the listing of impairments. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00; 20 C.F.R. § 404.1520a(b)(2) & (c)(2). As relevant to the instant case, paragraphs B of Listings 12.04 ("Affective [D]isorders") and 12.06 ("Anxiety [D]isorders") each contain four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.04B & 12.06B; see also 20 C.F.R. § 404.1520a(c)(3). The ALJ's decision must include a specific finding of the degree of limitation in each of those functional areas. 20 C.F.R. § 404.1520a(e)(4). However, the paragraph B criteria limitations do not constitute an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4 (emphasis added). Rather, the ALJ uses those limitations to evaluate the severity of Plaintiff's mental impairments at steps two and three of the SEP. Id. "The mental RFC assessment used at steps 4 and 5 of the [SEP] requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C" id., and includes consideration of Plaintiff's "abilities to: understand, carry out, and remember

9

instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting" id. at *6. Thus, the regulations do not require the ALJ to incorporate word-for-word the limitations found in evaluating the severity of mental impairments into either the RFC or any hypothetical question. See Yoho v. Commissioner of Soc. Sec., No. 98-1684, 1998 WL 911719, at *3 (4th Cir. Dec. 31, 1998) (unpublished) (holding ALJ has no obligation to transfer paragraph B findings verbatim to hypothetical question(s)); accord Patterson v. Astrue, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (unpublished).

With regard to activities of daily living, Plaintiff faults the ALJ for failing to "discuss what effect, if any, [Plaintiff's] [mild] difficulties with activities of daily living[,] when combined with his other impairments[,] have on his ability to engage in work activity on a sustained basis." (Docket Entry 8 at 5.) Notably, however, Plaintiff neither disputes the ALJ's finding of mild limitation in daily activities (see Tr. 76) and/or the ALJ's description of Plaintiff's reported daily activities (see Tr. 76-77, 78), nor makes any attempt to show how a mild limitation in daily activities should have further impacted the ALJ's RFC (see Docket Entry 8 at 2-8). Moreover, the ALJ gave "significant weight" to the opinion of state agency psychological consultant

10

Steven E. Salmony, Ph.D. (Tr. 81), who concluded that Plaintiff remained capable of performing "[simple, routine, repetitive tasks] in a low stress, low/non[] production environment not requiring extensive contact with others" (Tr. 50), even with moderate limitation in ability to perform daily activities (see Tr. 46).

Although Plaintiff concedes that the ALJ restricted Plaintiff's contact with the public, supervisors, and co-workers to accommodate Plaintiff's moderate limitation in social functioning (see Docket Entry 8 at 5-6; see also Tr. 76), he faults the ALJ for failing to define the terms "contact," "occasional," "brief," "infrequent," and "superficial" (Docket Entry 8 at 5-6), which allegedly left the VE "and subsequent reviewers to guess what [the ALJ] meant" (id. at 5). This line of argument entitles Plaintiff to no relief. As an initial matter, the Commissioner has adopted the Dictionary of Occupational Titles's definition of "occasional," see 20 C.F.R. § 404.1567, which means occurring from very little up to one-third of an eight-hour work day, see Dictionary of Occupational Titles, App'x C, § IV.c (4th ed. rev. 1991) ("DOT"). Similarly, the DOT defines "frequent" as occurring from one-third to two-thirds of an eight-hour work day, see id.; "[l]ogically, since 'infrequent' is less than 'frequent,' 'infrequent' would be less than one-third of the time . . . which parallels the definition of 'occasional.'" Sanders v. Astrue, Civ. No. 11-1356 (JNE/JJG), 2012 WL 1657922, at *12 (D. Minn. Apr. 17, 2012)

11

(unpublished), _recommendation adopted and modified on other grounds_, 2012 WL 1658988 (D. Minn. May 11, 2012) (unpublished).

Furthermore, Plaintiff has not shown why the terms "contact," "brief," and "superficial" warrant explanation beyond their common, every day meanings. (_See_ Docket Entry 8 at 6.) Nor does it appear he could. _See_ _Rather v. Colvin_, No. 13-cv-308-TLW, 2014 WL 4699807, at *7 (N.D. Okla. Sept. 22, 2014) (unpublished) (finding term superficial "unambiguous" and "frequently used in the context of a Social Security disability case" and remarking that ALJs and VEs "are well aware of the definition[] or meaning[] of the term[] 'superficial'"); _Whitehouse v. Colvin_, No. 3:13-CV-894 (MPS), 2014 WL 4685187, at *14 (D. Conn. Sept. 19, 2014) (unpublished) (deeming "brief and superficial interaction" a "precise" limitation in hypothetical question); _Pierson v. Commissioner of Soc. Sec._, No. 1:12-cv-126, 2013 WL 428751, at *7 (S.D. Ohio Feb. 1, 2013) (unpublished) (noting term "superficial is in common usage" and "is not a medical term or term of art requiring expansion or clarification"), _recommendation adopted_, 2013 WL 791875 (S.D. Ohio Mar. 4, 2013) (unpublished); _Campos v. Astrue_, No. CV 10-8603 AGR, 2012 WL 467985, at *2 (C.D. Cal. Feb. 14, 2012) (unpublished) (finding phrase "limited contact with the general public . . . reasonably compatible with a job that does not focus on working with people").

12

Even more significantly, the VE did not express any difficulty in understanding the meaning of the ALJ's hypotheticals (see Tr. 37-39), and Plaintiff's counsel, despite an opportunity for cross-examination, declined to question the VE on any subject, let alone the meaning of the terms in question or whether the jobs cited by the VE accommodated those restrictions (see Tr. 39). That consideration also forecloses relief. See Pierson, 2013 WL 428751, at *7 (holding that, "despite the purported vagueness of the term [superficial], any error would be harmless as the VE was able to understand the term and testified that there were jobs in the local and national economy that [the] plaintiff could perform").[5]

Lastly, Plaintiff contends that the ALJ failed to account for Plaintiff's moderate limitation in concentration, persistence, or pace ("CPP") in the RFC. (Docket Entry 8 at 6-8.) Specifically, Plaintiff asserts that, under Mascio, "an ALJ does not account 'for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work.'" (Id. at 7 (quoting Mascio, 780 F.3d at 638 (in turn quoting Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011))).)

---

[5] Plaintiff additionally asserts error arising out of the ALJ's failure to include in the RFC any "determination as to how [Plaintiff] will be able to accept instructions, criticism, etc. from his supervisors." (Docket Entry 8 at 6.) The ALJ adequately addressed any limitations Plaintiff had in his ability to interact with supervisors by restricting him to only occasional contact with such individuals. (See Tr. 77.) Moreover, the ALJ gave "significant weight" to the opinion of state agency psychological consultant Steven E. Salmony, Ph.D. (see Tr. 81), who concluded that, despite moderate limitation in social functioning (see Tr. 46), Plaintiff remained capable of performing work "without extensive contact with others" (Tr. 50).

According to Plaintiff, "only a determination of [Plaintiff's] ability to stay on task would account for his limitation in [CPP]." (Id.)

Indeed, the Mascio court expressly held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Mascio, 780 F.3d at 638. However, that court also allowed for the possibility that an ALJ could adequately explain why moderate limitation in CPP would not require the RFC to include specific restrictions related to the ability to stay on task. Id. A neighboring federal district court recently had occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation adopted by District Judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced" and that ALJ "gave abundant explanation" for why

14

unskilled work adequately accounted for claimant's moderate limitation in CPP, where ALJ relied on claimant's daily activities and treating physicians's opinions of claimant's mental abilities).

Here, the ALJ sufficiently explained why the mental restrictions in the RFC adequately accounted for Plaintiff's moderate limitation in CPP. In determining Plaintiff's mental RFC, the ALJ gave "significant weight" to Dr. Salmony's opinion. (Tr. 81.) Notably, Dr. Salmony concluded that, despite moderate limitation in CPP (see Tr. 46), Plaintiff "can sustain adequate [CPP] throughout the extended day" (Tr. 49 (emphasis added)). As a result, the ALJ expressly included in the RFC that Plaintiff "could maintain attention and concentration for two-hour segments over an eight-hour period" (Tr. 77 (emphasis added)), and included that same language in the dispositive hypothetical question to the VE (see Tr. 37). Accordingly, the ALJ explicitly considered Plaintiff's ability to "stay on task," which the Mascio court distinguished from the ability to perform simple tasks, see Mascio, 780 F.3d at 638, and created "an accurate and logical bridge" between the record evidence and his conclusion that Plaintiff can perform simple tasks, notwithstanding moderate limitation in CPP, see Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). As a result, the Court should decline to remand under Mascio. See Del Vecchio v. Colvin, No. 1:14CV116, 2015 WL 5023857, at *6 (W.D.N.C. Aug. 25, 2015) (unpublished) ("Here, unlike in Mascio, the ALJ

15

discussed substantial record evidence in determining [the claimant's] mental RFC, and his explicit reliance on [the state agency consultant's] opinion adequately explains why [the claimant's] limitations in [CPP] did not translate into any additional restrictions . . . . Therefore, the Court is not left to guess at the ALJ's decision-making process.").

In sum, Plaintiff's first assignment of error fails to entitle him to relief.

## 2. RFC

Next, Plaintiff asserts that the ALJ's RFC determination contains several errors. (See Docket Entry 8 at 8-14.) First, Plaintiff faults the ALJ for failing to discuss whether Plaintiff's hearing loss and tinnitus impacted Plaintiff's RFC. (Id. at 9.) Second, Plaintiff maintains that the ALJ failed to incorporate into the RFC the state agency consultants's opinions that Plaintiff had moderate limitations "in his abilit[ies] to[] work with or in proximity to others without being distracted by them and to accept instructions and respond appropriately to criticism from supervisors." (Id. at 9-10 (citing Tr. 49, 64-65).) Third, Plaintiff contends that the ALJ failed to resolve certain conflicts in the state agency consultants's opinions. (Id. at 11-13.) These assertions do not warrant relief.

To begin, the ALJ did not err by failing to include any limitations in the RFC related to Plaintiff's hearing loss and

16

tinnitus for several reasons. First, Plaintiff did not include hearing loss or tinnitus in the list of disabling impairments on his Disability Report. (See Tr. 214.) That fact undermines his suggestion here that such conditions may have caused functional limitations. See, e.g., Thomas v. Colvin, Civ. No. 1:13-1294-RMG, 2014 WL 2611720, at *1-2, 13 (D.S.C. June 11, 2014) (unpublished) (adopting recommendation that rejected argument that "ALJ erred by failing to discuss [the][p]laintiff's obesity in the RFC analysis" because, inter alia, the plaintiff "did not allege obesity as an impairment in his Disability Reports").[6]

Furthermore, the audiologist records Plaintiff submitted reflect that, although he experienced bilateral sensorineural hearing loss at high frequencies and reported subjective bilateral tinnitus, his "hearing [wa]s adequate for listening needs in most listening situations . . . ." (Tr. 529 (emphasis added).) Finally, Plaintiff has not even alleged, much less cited record support showing, that he suffered any particular work-related functional limitations as a result of any hearing loss or tinnitus. (See Docket Entry 8 at 9.) Accordingly, Plaintiff has not met his burden to show that his auditory impairments caused functional

---

[6] To the extent Plaintiff contends the ALJ committed a step two error by failing to identify Plaintiff's auditory impairments as severe (see Docket Entry 8 at 9), Plaintiff's failure to list those conditions in his Disability Report also defeats that claim. See Abdullahi v. Colvin, No. 4:12CV3185, 2013 WL 6239385, at *11 (D. Neb. Dec. 2, 2013) (unpublished) (holding "ALJ properly excluded [the plaintiff's] hearing loss from [the] list of severe impairments" because, inter alia, the plaintiff "failed to raise it in her application for benefits").

limitations that the ALJ should have included in the RFC. See McAnally v. Astrue, 241 F. App'x 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate that . . . the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations." (internal brackets and quotation marks omitted)); see also Clarification of Rules Involving Residual Functional Capacity Assessments; Clarification of Use of Vocational Experts and Other Sources at Step 4 of the Sequential Evaluation Process; Incorporation of "Special Profile" Into Regulations, 68 Fed. Reg. 51153-01, 51155 (Aug. 26, 2003) ("[The claimant] shoulder[s] the dual burdens of production and persuasion through step 4 of the [SEP].").[7]

Plaintiff's contention that the ALJ failed to incorporate into the RFC the state agency consultants' moderate limitations in Plaintiff's abilities to work with others without distraction and to accept instructions and respond appropriately to criticism from supervisors (see Docket Entry 8 at 9-10 (citing Tr. 49, 64-65))

---

[7] Because Plaintiff has not shown any error related to auditory impairments in connection with the RFC, any error in omitting those conditions from the list of severe impairments at step two would qualify as harmless. See Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005) (ruling remand for express consideration of alleged impairment unnecessary where plaintiff failed to specify how that impairment would impact the ALJ's RFC analysis); Powell v. Astrue, 927 F. Supp. 2d 267, 274-75 (W.D.N.C. 2013) (holding that, "even if the ALJ did err by failing to find [a condition] to be a severe impairment, it is of no moment," because ALJ found other severe impairments and properly completed remainder of SEP).

also misses the mark. These "moderate" limitations appear in the portion of the mental RFC form which the state agency psychological consultants use as "merely a worksheet to aid in deciding the presence and degree of functional limitations . . . and does not constitute the RFC assessment." Program Operations Manual System ("POMS") DI 24510.060B.2.a (bold font omitted). The state agency consultants assess the actual mental RFC in the narrative portion of the form. See POMS DI 24510.060B.4.

Here, despite moderate limitations in working with others and accepting instructions and criticism (see Tr. 49, 64-65), both state agency psychological consultants concluded in the narrative portion of the mental RFC form that Plaintiff retained the mental capacity to perform a range of simple, routine work without extensive contact with others (see Tr. 50, 65). The ALJ did not err by relying on the state agency consultants' more specific mental RFC assessment. See Jones v. Commissioner of Soc. Sec., 478 F. App'x 610, 612 (11th Cir. 2012) (rejecting claimant's contention that ALJ should have accounted in RFC for moderate limitations identified on mental RFC assessment form, and noting that the limitations "are only part of a worksheet that does not constitute the doctors' actual RFC assessment" (brackets and internal quotation marks omitted)); Smith v. Commissioner of Soc. Sec., 631 F.3d 632, 636-37 (3d Cir. 2010) (finding no error where ALJ did not include in hypothetical question moderate limitations contained in

worksheet part of mental RFC form, noting that such findings "may be assigned little or no weight," and further concluding that the claimant could not "rely on the worksheet component" of mental RFC form); Johansen v. Barnhart, 314 F.3d 283, 288-89 (7th Cir. 2002) (upholding ALJ's reliance on specific mental RFC assessment that the claimant could perform low-stress, repetitive work, rather than subsidiary findings of moderate limitations in his ability to maintain a regular schedule and attendance and to complete a normal workday and workweek without interruptions from psychologically-based symptoms); Schurr v. Colvin, Civ. No. 12-C-0969, 2013 WL 1949615, at *15 (E.D. Wis. May 9, 2013) (unpublished) ("The ALJ did not err in crediting the more specific, narrative portion of [the state agency consultant's] report, rather than the check-boxes.").

Lastly, Plaintiff asserts that the state agency consultants' opinions contain conflicts that the ALJ failed to resolve. (See Docket Entry 8 at 11-13.) In particular, Plaintiff points to the alleged inconsistency between both consultants' findings that Plaintiff had moderate impairment in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" (see Tr. 49, 64), and their opinions that "[p]sych[ologically] based [symptoms] will rarely intrude during the usual workday/workweek" (Tr. 49, 65). (See Docket Entry 8 at 11.) In addition, Plaintiff

20

highlights the purported incongruity between the consultants'
findings that Plaintiff had moderate limitation in his ability to
"respond appropriately to changes in the work setting" (Tr. 50,
65), and their conclusions that Plaintiff "could sufficiently adapt
to workplace changes" (id.). (See Docket Entry 8 at 12.)

Contrary to Plaintiff's argument, no inconsistency necessarily
exists between the consultants' moderate limitations and the
conclusions in question. In the context of rating a mental
impairment, a "moderate" limitation means only that the claimant's
"capacity to perform the activity is impaired," and not that the
claimant lacks the capacity. See POMS DI 24510.063B.2 (emphasis
added and bold font omitted); see also Smith, 631 F.3d at 637
(remarking that "the Social Security Administration has provided a
specific definition of the term [moderate] in the context of the
[m]ental [RFC] assessment . . . [which] does not require that the
[claimant's] capacity be at a level that is unacceptable in a
national workforce"); Justus v. Astrue, No. 2:12-CV-126, 2013 WL
941336, at *4 (S.D. Ohio Mar. 8, 2013) (unpublished) (rejecting the
plaintiff's argument that "there [wa]s no way to reconcile" the
state agency consultant's finding that the plaintiff had moderate
limitation in attention, concentration, and persistence, and the
consultant's ultimate conclusion that the plaintiff remained
"capable of completing 3 to 4 step tasks that do not have strict
production standards or schedules and which [do] not require more

21

than superficial interactions with others," because the plaintiff "misunderst[ood] . . . the significance of those findings" which "[we]re simply part of a worksheet that d[id] not constitute the doctor's actual RFC assessment"). Thus, for example, Dr. Salmony could find that Plaintiff had moderate impairment in his ability to complete a workday without interruptions from psychological symptoms, and still consistently conclude that those symptoms would only rarely intrude in the usual work situations. (See Tr. 49.)

Simply put, Plaintiff's contentions of error in the ALJ's RFC do not require remand.

### III.  CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for a Judgment Reversing or Modifying the Decision of the Commissioner of Social Security, or Remanding the Cause for a Rehearing (Docket Entry 7) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 9) be granted, and that judgment be entered for Defendant.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 11, 2016

22